UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHULER DRILLING COMPANY, INC.,<br><br> *Plaintiff,*<br><br>v.<br><br>DISIERE PARTNERS, LLC f/k/a DISIERE PARTNERS, and DAVID J. DISIERE,<br><br> *Defendants.* | §§§§§§§§§§§§§ Civil Action No. 3:22-CV-2062-X |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants David J. Disiere and Disiere Partners, LLC f/k/a Disiere Partners' (collectively, the "Disiere Defendants") motion to exclude testimony of expert Larry Kanter. (Doc. 74). Having considered the parties' arguments, the underlying facts, and the applicable law, the Court **DENIES** the motion. (Doc. 74).

### **I. Background**

This is an alleged fraudulent transfer case. Plaintiff Shuler Drilling Company, LLC ("Shuler") obtained a judgment in the Western District of Arkansas against Southern Management, a company wholly owned by the Disiere Defendants. After some contentious, post-judgment discovery disputes in Arkansas, Shuler brought the present action under the Texas Uniform Fraudulent Transfer Act ("TUFTA") against the Disiere Defendants alleging that two asset transfers were fraudulent. According to Shuler, these concealed transfers were made after Shuler obtained a judgment

1

against Southern Management with funds that could and should have paid the judgment. Instead, Shuler alleges that the Disiere Defendants intended to make these transfers so that Southern Management would be unable to pay the judgment against it.

Shuler's forensic accounting expert witness, Larry Kanter, served two expert reports in 2022 and 2024. The Disiere Defendants move to exclude all Kanter's expert opinions in his reports, eight opinions in total, as unreliable and irrelevant. The motion is ripe for this Court's consideration.

## II. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."[1] As a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony.[2] The party offering the expert

---

[1] FED. R. EVID. 702.

[2] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.[3]

Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue.[4]  Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."[5]

Expert testimony is reliable if "the reasoning or methodology underlying the testimony is scientifically valid."[6]  Such testimony must be "more than subjective belief or unsupported speculation."[7]  In other words, this Court need not admit testimony "that is connected to existing data only by the *ipse dixit* of the expert."[8]  The Court also does not need to admit testimony based on indisputably wrong facts.[9]  In conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology.[10]  The Court normally analyzes

---

[3] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002).

[4] *Daubert*, 509 U.S. at 591.

[5] *See Mathis*, 302 F.3d at 460 (applying Rule 401 to expert testimony).

[6] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (citing *Daubert*, 509 U.S. at 592–93).

[7] *Daubert*, 509 U.S. at 590.

[8] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[9] *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996).

[10] *Daubert*, 509 U.S. at 595; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153–54 (1999).

questions of reliability using the five nonexclusive factors known as the *Daubert* factors.[11]

### III. Analysis

The Disiere Defendants contend that opinion number 1 in Kanter's 2024 expert report and opinion number six in his 2022 expert report are unreliable and irrelevant because they rely on self-created law. The expert opinions are as follows:

> 2024 Kanter Report, Opinion 1: The General Ledgers ("G/L") of SMS, produced to Shuler in 2022, were the first documents that clearly showed that the Loadcraft Drilling Rig ("the Rig") was purchased by SMS in 2008, was still on the G/L of SMS at the beginning of 2015, was sold by SMS during 2015 and that the cash proceeds of the sale of the Rig were transferred to David Disiere. I found no other documents produced prior to 2022 that would have clearly shown that all four of those elements/events occurred.[12]
>
> 2022 Kanter Report, Opinion 6: SMS sold a drilling rig in 2015, at a significant profit, more than a year after the date the Judgement (sic) was entered in favor of Shuler.[13]

These two opinions help assist the trier of fact in understanding the evidence and determining facts in issue. Specifically, they both assist the trier of fact in understanding how the general ledgers are analyzed and reconciling detailed financial statements with those ledgers, which are facts that go to ultimate issues in this case. Therefore, this testimony is relevant.

---

[11] The five nonexclusive *Daubert* factors are: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593–94.

[12] Doc. 77-2 at 45.

[13] *Id.* at 31.

Moreover, the Disiere Defendants do not argue that these opinions are inaccurate. Instead, they contend that they are unreliable because Kanter seeks to insert his own legal standards instead of those required by TUFTA and controlling precedent. But as Shuler aptly notes, the purpose of these opinions is not to offer legal conclusions on the elements required by TUFTA. And a plain reading of these expert opinions shows that a legal conclusion simply does not exist nor does Kanter ask the jury to disregard precedent. For these reasons, opinion one of the 2024 Kanter report and opinion six of the 2022 Kanter report are also reliable.

The Disiere Defendants also object that the remaining opinions in these two reports are irrelevant. But upon careful review, these opinions are entirely relevant because they assist the factfinder in determining whether the Disiere Defendants' financial documents are misleading and contradictory. As Kanter repeatedly testified at deposition, these opinions explain how certain financial documents are misleading and cannot be reconciled with the general ledger.[14] The opinions are as follows:

> Opinion 1, 2022 Kanter Report: Many of the financial records produced by Disiere in response to the Orders entered by Judge Dale Tillery on March 3, 2020 and May 20, 2021 are inconsistent with each other.[15]
>
> Opinion 2, 2022 Kanter Report: Numerous examples exist where the data on the Federal Income Tax Returns produced to Shuler cannot be reconciled to the data on the financial statements produced to Shuler.[16]

---

[14] *Id.* at 122–30.

[15] *Id.* at 22.

[16] *Id.* at 24.

<u>Opinion 3, 2022 Kanter Report:</u> SMS has been undercapitalized and reliant on the assets of Disiere since at least 2012. In fact, it appears that SMS could not survive as a stand-alone entity.[17]

<u>Opinion 4, 2022 Kanter Report:</u> The Financial Statements produced to Shuler for 2015 are potentially misleading.[18]

<u>Opinion 5, 2022 Kanter Report:</u> In his deposition of June 22, 2020, Disiere testified about various financial issues relating to a project known as Cottage Grove. I have analyzed the General Ledgers of SMS for the years 2008–2017 produced in connection with this matter. Disiere's testimony regarding revenues earned by SMS related to Cottage Grove is contradicted by the information produced in the SMS General Ledgers. SMS did in fact, report revenues for operating the Cottage Grove Field.[19]

<u>Opinion 2, 2024 Kanter Report:</u> David Disiere has asserted that he was the owner of the Rig as of the date of the sale of the Rig in 2015. However, the 2015 G/L reports that a payment in the amount of $36,623.64 was made on 2/26/2015 to WNB. The description of that payment is "WNB#131620 Loadcraft Drilling". The payment was recorded as interest. If in fact SMS made an interest payment on a loan related to an asset (the Rig) that was not owned by SMS and was instead owned by Disiere, then Disiere has received a benefit. In addition, we noted that payments with similar descriptions were made to WNB dating back to at least 2011.[20]

Testimony regarding misleading financial records, undercapitalization of Southern Management, and contradictory statements by Disiere has the tendency to make the ultimate issue—whether the Disiere Defendants fraudulently transferred assets in order to evade Shuler's judgment against Southern Management—more probable than it would be without this testimony.  Thus, Kanter's testimony is relevant.

---

[17] *Id.* at 27.

[18] *Id.* at 29.

[19] *Id.* at 30.

[20] *Id.* at 49–50.

## IV. Conclusion

The Court **DENIES** the Disiere Defendants' motion to exclude testimony of expert Larry Kanter. (Doc. 74).

**IT IS SO ORDERED** this 13th day of August, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE